IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LEAH A. D.,[1] )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>ANDREW M. SAUL, )<br>**Commissioner of Social Security,** )<br>)<br>**Defendant.** )<br>_____) | **CIVIL ACTION**<br><br>No. 19-1223-JWL |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614 of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act). Finding error in the Administrative Law Judge's (ALJ) evaluation and explanation of Plaintiff's alleged mental impairments, the court ORDERS that the decision below shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the Commissioner's final decision for further proceedings consistent with this decision.

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

**I.      Background**

Plaintiff filed applications for DIB and SSI benefits on October 18, 2016. (R. 15, 216-25). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ's residual functional capacity (RFC) assessment is not based on substantial evidence because, among other reasons, the ALJ erred in evaluating and explaining his evaluation of Plaintiff's mental impairments. (Pl. Br. 9-18).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the

3

Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds remand is necessary because the ALJ erred in evaluating Plaintiff's mental impairments.  Therefore, on remand the Commissioner must reapply the Psychiatric Review Technique and the sequential evaluation process beginning at step two.  Thus, the other steps at which Plaintiff alleges error must be reevaluated on remand and she may make her arguments regarding those errors to the Commissioner then.

**II.     Discussion**

Plaintiff points out that the ALJ found her medically determinable mental impairments not severe within the meaning of the Act and regulations and assessed no mental limitations in Plaintiff's RFC.  (Pl. Br. 10-11).  She points out that the agency

4

psychological consultant on the initial review, Dr. Brandhorst, opined that Plaintiff's mental impairments were not severe, that the agency then sent Plaintiff to a psychological consultative examiner, Dr. Berg, who opined that Plaintiff had mental limitations, and that based on Dr. Berg's examination the agency psychological consultant on reconsideration, Dr. Adams, opined that Plaintiff's mental impairments are severe. (Pl. Br. 11-13). She points out that the ALJ discounted the opinions of both Dr. Berg and Dr. Adams and accorded significant weight to Dr. Brandhorst's opinion on the initial review and argues that the evidence requires finding Plaintiff's mental impairments are severe, requiring some limitation in the mental RFC assessed. Id. at 14-18.

In response, the Commissioner argues the ALJ reasonably found Plaintiff's mental impairments are not severe within the meaning of the Act and regulations and that her mental impairments impose no Mental RFC limitations. He argues the ALJ's evaluation of the psychologists' medical opinions is supported by the record evidence. (Comm'r Br. 10-13). He argues that "in making [his] findings, the ALJ noted Plaintiff's failure to seek significant ongoing mental health treatment for much of the period at issue." Id. at 14. He points out "the issue is not whether Plaintiff's position was supported by substantial evidence, but whether the ALJ's decision was so supported." Id. at 16. He argues, "Even if Dr. Brandhorst did not have the opportunity to review the entire record ultimately before the Commissioner, the ALJ did, as was his duty." Id. at 17.

### A.     Step Two Standard for Evaluating Mental Impairments

A mental impairment is not considered severe if it does not significantly limit plaintiff's ability to do <u>basic</u> work activities such as understanding, carrying out, and

remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1522, 416.922.  The Tenth Circuit has interpreted the regulations and determined that to establish a "severe" impairment or combination of impairments at step two of the sequential evaluation process, a claimant must make only a "de minimis" showing.  Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).  A claimant need only show that an impairment would have more than a minimal effect on her ability to do basic work activities.  Williams, 844 F.2d at 751.  However, she must show more than the mere presence of a condition or ailment.  Hinkle, 132 F.3d at 1352 (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)).  If an impairment's medical severity is so slight that it could not interfere with or have a serious impact on a claimant's ability to do basic work activities, it could not prevent her from engaging in substantial work activity and will not be considered severe.  Hinkle, 132 F.3d at 1352.

The determination at step two is based on medical factors alone, and not vocational factors such as age, education, or work experience.  Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003).  A claimant must provide medical evidence that she had an impairment and how severe it was during the time the claimant alleges she was disabled.  20 C.F.R. §§ 404.1512, 416.912.  Under the regulations, the Social Security Administration (SSA) must consider the combined effect of all the claimant's medically determinable impairments at all steps of the sequential evaluation process.  Brescia v. Astrue, 287 F. App'x 626, 628-629 (10th Cir. 2008); 20 C.F.R. §§ 404.1523(c), 416.923(c) (2017).

The Commissioner has promulgated a Psychiatric Review Technique for evaluating mental impairments. 20 C.F.R. §§ 404.1520a, 416.920a (2018) (effective Mar 27, 2017). In evaluating the severity of mental impairments at steps two and three, the technique provides for rating the degree of functional limitation in each of four broad mental functional areas: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. Id. §§ 404.1520a(c)(3), 416.920a(c)(3). After rating the degree of limitation in each functional area, the Commissioner determines the severity of Plaintiff's mental impairments. Id. §§ 404.1520a(d), 416.920a(d).

When the functional areas are rated as "none" or "mild," the agency will generally conclude at step two of the sequential evaluation process that Plaintiff's mental impairments are not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [Plaintiff's] ability to do basic work activities." Id. §§ 404.1520a(d)(1), 416.920a(d)(1). If the mental impairments are severe, the technique requires an evaluation of whether the impairment meets or equals a listed mental disorder by comparing the step two findings and the medical evidence with the criteria of the listings. Id. §§ 404.1520a(d)(2), 416.920a(d)(2). The four broad mental functional areas are also defined as the Paragraph B criteria of most of the Listings of mental disorders. 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00E; see also, 12.00A (all mental disorder Listings except 12.05 contain Paragraph B criteria). If the Commissioner determines that Plaintiff's mental impairments do not meet or equal a listing, he will then assess Plaintiff's RFC. Id. §§ 404.1520a(d)(3), 416.920a(d)(3).

In determining RFC, the regulations provide that the Commissioner will consider Plaintiff's "ability to meet the … mental … and other requirements of work." Id. §§ 404.1545(a)(4), 416.945(a)(4). The regulations provide that "[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce [Plaintiff's] ability to do past work." Id. §§ 404.1545(c), 416.945(c).

The Commissioner has clarified the difference between evaluating the severity of limitations and restrictions resulting from mental impairments at steps two and three based upon the broad functional areas identified in the psychiatric review technique and assessing mental RFC. Soc. Sec. Ruling (SSR) 96-8p, West's Soc. Sec. Reporting Serv., Rulings 146 (Supp. 2019). "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in" the four functional areas. Id. RFC must be expressed in terms of specific work-related functions. Id. at 147. "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." Id. at 148. Therefore, an ALJ should not state a mental RFC in terms of the four functional areas but should make a function-by-function assessment of each of the work-related mental activities relevant to the case at hand. Id. at 144.

### B. The ALJ's Evaluation

The ALJ's entire evaluation of Plaintiff's mental impairments occurred in his step two discussion in which he summarized the evidence, Plaintiff's allegations, and the medical opinions regarding her mental impairments. (R. 18-20). He identified Plaintiff's mental impairments as generalized anxiety disorder and major depression, found they cause no more than mild limitations in the Paragraph B mental functional areas and are therefore not severe within the meaning of the Act and regulations. Id. at 19. He discussed his evaluation of the psychologists' medical opinions:

> A psychological consultative examiner opined she would be able to attend to and process simple information as well as some information of intermediate complexity, would be capable of performing unskilled and likely some semi-skilled tasks, and could accommodate the demands of superficial interpersonal interactions (Ex. 10F). The examiner noted that, despite her above average intellectual ability, her medication and possibly her mental impairments mildly compromised her ability to engage in basic work related activities. However, the undersigned gives little weight to this opinion because it is not wholly consistent with the clinical signs and findings mentioned above. For instance, during the examiner's interview with the claimant was cooperative [sic], pleasant, rather outgoing, and spontaneous although she needed simple instructions repeated on occasion, displayed limited delayed recall, and a borderline immediate memory for complex information. This opinion was also based on a one-time examination, and this opinion is inconsistent with reports that her activities of daily living were primarily limited by her physical impairments, including her ability to drive, shop, or participate in water aerobics.
>
> Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas, they are nonsevere (20 CFR 404.1520a(d)(l) and 4l6.920a(d)(l)).
>
> In making this finding, the undersigned gives little weight to the State agency psychological consultant's opinion upon reconsideration that the claimant could understand, remember or carry out 3 to 4 step instructions and occasionally interact with the public (Ex. 8A; 7A). This opinion was

9

> primarily based upon the psychological consultative examiner's opinion and the State agency psychological consultant is not an examining source.
>
> On the other hand, the undersigned gives significant weight to the State agency psychological consultant's opinion at the initial level (Ex. 1A; 2A). This consultant opined that the claimant's mental impairments are nonsevere, and while the consultant is not an examining source, this opinion is generally consistent with the overall clinical signs and findings and her limited treatment history.

(R. 19-20).

Having found Plaintiff's mental impairments not severe within the meaning of the Act and the regulations (R. 18) (they do not have more than a minimal effect on Plaintiff's ability to perform <u>basic</u> mental work activities), the ALJ assessed no mental limitations in Plaintiff's RFC. (R. 21) (finding no. 5). In his step four evaluation, the ALJ found that Plaintiff's work as a chief financial officer ("skilled work with an SVP of 8") qualified as past relevant work. (R. 24). He compared Plaintiff's RFC "with the physical and mental demands" of that work and found "that the claimant is able to perform her past relevant work as a CFO as it is generally performed." <u>Id.</u>

**C.   Analysis**

In finding Plaintiff's mental impairments not severe, the ALJ found they have no more than a minimal effect on Plaintiff's ability to perform <u>basic</u> mental work activities. Basic mental work activities are defined in the regulations as understanding, carrying out, and remembering <u>simple</u> instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1522, 416.922. As quoted above, SSR 96-8p reiterates, "Work-related mental activities generally required by competitive, remunerative work

10

include the abilities to:  understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 148 (Supp. 2019).  SSA has identified 14 basic mental abilities needed for any job, POMS DI 25020.010(B)(2), specific aspects of which are critical for performing unskilled work.  Id. DI 25020.010(B)(3).  The agency recognizes that semiskilled and skilled work require the 14 basic mental abilities noted above and often present "an **increasing requirement for understanding** and **memory** and for **concentration** and **persistence**, e.g.: the ability to:  understand and remember detailed instructions, carry out detailed instructions, and set realistic goals or make plans independently of others."  Id. DI 25020.010(B)(4) (bold in original).  The agency recognizes that in semiskilled and skilled work "[o]ther special abilities may be needed depending upon the type of work and specific functions it involves."  Id.

      Here, the ALJ found Plaintiff's mental impairments are not severe because they cause no more than mild limitations on the four mental functional areas and by implication have no more than a minimal effect on her abilities to perform basic mental work activities.  And he found that she is able to perform her past relevant work as a chief financial officer, which requires the highest specific vocational preparation level (8), and he stated he had compared the mental demands of that work with Plaintiff's RFC, but there is no record evidence suggesting the actual, specific mental abilities demanded by that work (beyond the general statement of an SVP of 8) and there is no discussion in the decision at issue or in the hearing colloquy between the ALJ and the VE

11

regarding the increased mental abilities required to perform the job and no specific discussion or finding that Plaintiff has mental abilities greater than those necessary to perform basic mental work activities.

Here the ALJ recognized Dr. Berg's opinion that Plaintiff can attend to and process simple information and some information of intermediate complexity, enabling her to perform unskilled and some semi-skilled tasks, and handle superficial interpersonal interactions, and he recognized that Dr. Adams based her opinion on Dr. Berg's report. (R. 19-20). In essence, he discounted these opinions because Dr. Berg's opinion was based on a one-time examination and was "not wholly consistent with the clinical signs and findings mentioned above."[2] Id. at 19. In the circumstances present here, neither reason is a valid basis to discount Dr. Berg's opinion.

First, while Dr. Berg's report and opinion is based on a one-time examination, his opinion is the only mental medical opinion directly based upon an examination at all. Dr. Brandhorst's and Dr. Adams's opinions were based only on a review of the record evidence. Moreover, Dr. Adams's opinion had the benefit of reviewing a more complete record—including Dr. Berg's report—than did Dr. Brandhorst, so to that extent Dr.

---

[2] The ALJ discounted Dr. Adams's opinion because it was "primarily based upon" Dr. Berg's opinion and Dr. Adams "is not an examining source." (R. 20). However, he recognized Dr. Brandhorst is also a consultant for the state agency and is not an examining source but gave his opinion "significant weight" because it is "generally consistent with the overall clinical signs and findings and [Plaintiff's] limited treatment history." Id. Thus, the ALJ's evaluation of the medical opinions stands or falls on whether he properly found Dr. Berg's opinion inconsistent, and Dr. Brandhorst's opinion consistent, with the record evidence and whether Dr. Berg's one-time examination is a proper basis to discount his opinion here.

Adams's opinion was based upon an examination of the plaintiff, although it was Dr. Berg's examination.  Second, in finding Dr. Berg's opinion inconsistent with the evidence, the ALJ provided an example which will not support his finding.  He explained:

> For instance, during the examiner's interview [] the claimant was cooperative, pleasant, rather outgoing, and spontaneous although she needed simple instructions repeated on occasion, displayed limited delayed recall, and a borderline immediate memory for complex information.

(R. 19).  The ALJ does not explain the inconsistency between being cooperative, pleasant, rather outgoing, and spontaneous, and needing simple instructions repeated on occasion, displaying limited delayed recall, and a borderline immediate memory for complex information.  Moreover, he does not specifically reject the findings regarding simple instructions, limited recall, or complex information, or explain how they would affect Plaintiff's performance of the job of a CFO.

The court is aware that it is the Commissioner's responsibility—the ALJ's in this case—to weigh the medical opinions, to assess RFC, and to compare a claimant's RFC with the mental demands of a job, and the court may not substitute its judgment for that of the Commissioner.  However, in a case such as this where the Commissioner has not explained the ambiguities or material inconsistencies created by his evaluation of the record evidence, remand is necessary for a proper evaluation.

**IT IS THEREFORE ORDERED** that the decision below shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g)

REMANDING the Commissioner's final decision for further proceedings consistent with this decision.

Dated June 2, 2020, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**